IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 17-cv-02853-RBJ

MCWHINNEY HOLDING COMPANY, LLLP, a Colorado Limited Liability Partnership,
MCWHINNEY CENTERRA LIFESTYLE CENTER, LLC, a Colorado Limited Liability Company, and
CENTERRA LIFESTYLE CENTER, LLC, a Delaware Limited Liability Company,

       Plaintiffs,
v.

G. DAN POAG, an individual;
JOSHUA D. POAG, an individual; an individual acting as co-trustee of the Josh and Chloee Poag 2004-GST Exempt Trust; an individual acting as co-trustee of the Jeremy and Chloee Poag 2004-GST Exempt Trust; an individual acting as co-trustee of the Mark and Chloee Poag 2004-GST Exempt Trust; an individual acting as co-trustee of the Josh and Dan Poag 2004-GST Exempt Trust; an individual acting as co-trustee of the Jeremy and Dan Poag 2004-GST Exempt Trust; an individual acting as co-trustee of the Mark and Dan Poag 2004-GST Exempt Trust;
TERRY W. McEWEN, an individual;
POAG & McEWEN LIFESTYLE CENTERS - CENTERRA, LLC, a Delaware Limited Liability Company;
POAG & McEWEN LIFESTYLE CENTERS, LLC, a Delaware Limited Liability Company;
POAG LIFESTYLE CENTERS, LLC, a Delaware Limited Liability Company;
POAG SHOPPING CENTERS, LLC, a Delaware Limited Liability Company;
PM LIFESTYLE SHOPPING CENTERS, LLC, a Delaware Limited Liability Company;
POAG BROTHERS, LLC, a Tennessee Limited Liability Company;
JEREMY M. POAG, an individual acting as co-trustee of the Josh and Chloee Poag 2004-GST Exempt Trust; an individual acting as co-trustee of the Jeremy and Chloee Poag 2004-GST Exempt Trust; an individual acting as co-trustee of the Mark and Chloee Poag 2004-GST Exempt Trust; an individual acting as co-trustee of the Josh and Dan Poag 2004-GST Exempt Trust; an individual acting as co-trustee of the Jeremy and Dan Poag 2004-GST Exempt Trust; an individual acting as co-trustee of the Mark and Dan Poag 2004-GST Exempt Trust;
D. MARK POAG, an individual acting as co-trustee of the Josh and Chloee Poag 2004-GST Exempt Trust; an individual acting as co-trustee of the Jeremy and Chloee Poag 2004-GST Exempt Trust; an individual acting as co-trustee of the Mark and Chloee Poag 2004-GST Exempt Trust; an individual acting as co-trustee of the Josh and Dan Poag 2004-GST Exempt Trust; an individual acting as co-trustee of the Jeremy and Dan Poag 2004-GST Exempt Trust; an individual acting as co-trustee of the Mark and Dan Poag 2004-GST Exempt Trust;
DOE INDIVIDUALS 1-10;
DOE TRUSTS 11-30; and

ROE CORPORATIONS 31-60;

 Defendants.

**ORDER ON MOTION TO AMEND PLAINTIFFS' FIRST AMENDED COMPLAINT**

 Plaintiffs move for leave to file a Second Amended Complaint ("SAC") in which it seeks to add five claims and two individual defendants. ECF No. 129 (red-lined version of the proposed SAC at ECF No. 129-2). The various existing defendants and one proposed defendant filed opposition briefs. ECF Nos. 133, 137, 138, 149, 169. The motion became ripe for review upon the filing of plaintiffs' five reply briefs. ECF Nos. 140, 172, 173, 174, 175. On review of the motion and briefs, the Court GRANTS plaintiffs' motion in part and DENIES it in part.

## I. BACKGROUND

 Plaintiffs and defendants have been in continuous litigation since 2011. Because of the lengthy and factually intensive background of this case, I will not repeat most of my previous background discussions that I have covered in two previous orders. *See* ECF Nos. 78, 106. Instead, I will primarily focus on the events that have occurred since my most recent order, ECF No. 106, dated September 28, 2018.

 The trial in the first phase of the state court litigation ("Phase I") occurred in June 2017 in the District Court of Larimer County, Colorado. Following a 13-day bench trial, Honorable Thomas R. French determined that Poag & McEwen Lifestyle Centers – Centerra, LLC ("P&M") breached its contractually imposed fiduciary duties owed to McWhinney Centerra Lifestyle Center, LLC ("MCLC") and to Centerra Lifestyle Center, LLC ("CLC") under the express terms of the Operating Agreement. *See* Phase I Judgment, ECF No. 22-1 at 34–70.

Judge French found P&M liable to MCLC for $42,006,032.50. *Id.* at 69. The state court reserved plaintiffs' alter ego claims for the second phase of the state court litigation ("Phase II").

In the Phase II bench trial, held in the last week of November 2018, Judge French heard evidence of whether Poag & McEwen Lifestyle Centers, LLC ("PMLC") and P&M were alter egos. *See* Phase II Judgment, ECF No. 132. On December 28, 2018 the court issued its opinion in which it found that PMLC and P&M were separate entities and not alter egos under Delaware law. *Id.* at 28. Phase II is currently on appeal to the Colorado Court of Appeals.

Returning to the case in this Court, I held a status conference on February 26, 2019. At the parties' request, I agreed to bifurcate the case in similar fashion as the state court proceedings. On January 6, 2020 I will hear the fraudulent inducement claims and other related claims. However, I stayed plaintiffs' alter ego and fraudulent transfer claims pending the appeal of Phase II and that decision's potential collateral estoppel effect.

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 15(a)(2) instructs that leave to amend should be freely granted when justice so requires. This Court freely permits parties to amend their pleadings absent "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). In this case, defendants' chief argument is that the proposed amendments would be futile. The futility question is "functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999).

To properly state a claim, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177

(10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true. *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

Plaintiffs' motion for leave to amend is somewhat unique in that plaintiffs argue the merits of their proposed claims. *See generally* ECF No. 129 at 5–14. In turn, defendants treat the motion as a Rule 12(b)(6) motion, attacking the proposed claims as futile for failure to state a claim. Because most of the claims are fully briefed, I too analyze the fully briefed claims under the Rule 12(b)(6) standard. I now turn to the proposed claims.

### III. ANALYSIS

**A. Aiding and Abetting Breach of Contractually Imposed Fiduciary Duties against Josh, Dan, Terry, David, PMLC, PMLSC, Chloee, Poag Brothers, and Trustee defendants.**

Plaintiffs' proposed third claim for relief is the tort of aiding and abetting a breach of contractually imposed fiduciary duties. ECF No. 129-2 at 65. Plaintiffs argue that a "party is liable for aiding and abetting if 'the party whom the defendant aids performs a wrongful act that causes an injury, the defendant is generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance, and the defendant knowingly and substantially assists the principal violation.'" ECF No. 129 at 5 (quoting *Holmes v. Young*, 885

4

P.2d 305, 308 (Colo. App. 1994) (citing Restatement (Second) of Torts § 876(b) (1977))). As evidenced by plaintiffs' cited authority, plaintiffs treat this claim as a tort. Consequently, defendants argue that the economic loss rule bars this claim. I agree with defendants.

I have already ruled that any post-contractual tort claims are barred by the economic loss rule. ECF No. 106 at 28–35. The wrongful conduct plaintiffs allege in this proposed claim stems from the operating agreement. Stated another way, plaintiffs have failed to allege a claim that "stem[s] from a tort duty independent of the contract." *Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 605 (Colo. 2016).[1] This principle applies to the officers, directors, and owners of the Poag and McEwen entities because, "[w]hen the economic loss rule bars a claim against a corporate entity, it may also bar claims against that entity's officers and directors, even if the officers and directors were not parties to the contract at issue." *Former TCHR, LLC v. First Hand Mgmt. LLC*, 317 P.3d 1226, 1232 (Colo. App. 2012). For example, certain tort claims "may be barred if they arise from duties implicated by the contract and relate to the performance of that contract." *Id.*

I find that the economic loss rule bars plaintiffs proposed third claim. Defendants' only duty arises from the Operating Agreement. Even though defendants are not signatories to the Operating Agreement, their duties stem from that agreement and relate directly to the performance of the agreement. This is in accord with similar rulings in the state court proceedings. In October 2014, the Colorado Court of Appeals upheld the trial court's dismissal of numerous claims barred by the economic loss rule. The dismissed claims included plaintiffs' (1) common law breach of fiduciary claim; (2) claim of intentional interference with contractual

---

[1] The choice of law analysis in this case is sharply disputed. However, the Colorado Court of Appeals affirmed the trial court judge's decision to apply Colorado law to plaintiffs' tort claims but Delaware law to plaintiffs' contract claims. ECF No. 58-1 at 4–7. Because I agree with the state courts' choice of law analysis, I will apply Colorado law for tort claims and Delaware law for contract claims.

obligations; and (3) claim for intentional inducement of breach of contract. ECF No. 58-1. The last two claims closely resemble plaintiffs' proposed third claim but with a different name. Just because plaintiffs seek to amend their claim to add officers and directors of the signatory entity, my decision remains unchanged. This is yet another attempt by plaintiffs to pierce the veil of the LLC. Pending any collateral estoppel effect, the outstanding alter ego claims will be decided in the second phase of the trial in this Court. Accordingly, plaintiffs' motion to add this claim in their proposed SAC is denied.

### B. Aiding and Abetting P&M's Commission of Fraud against Josh, Dan, Terry, David, PMLC, PMLSC, and Does.

Plaintiffs' proposed fourth claim for relief is the tort of aiding and abetting P&M's commission of fraud. ECF No. 129-2 at 73. For the same reasons, I also conclude that this claim is barred by the economic loss rule.

### C. Breach of Contract against Josh, Dan, and Terry.

Plaintiffs' proposed fifth claim for relief is a breach of contract claim against Josh, Dan, and Terry. ECF No. 129-2 at 76. Josh, Dan, and Terry were not signatories to the Operating Agreement. Undeterred, plaintiffs state that as "the 'humans' who [at] all times directly managed and controlled CLC via their absolute and total control over P&M and PMLSC, JOSH, DAN and TERRY owed the same contractually imposed fiduciary duties including, among other things, the fiduciary duty not to use their control over CLC's finances, affairs and assets to benefit themselves at PLAINTIFFS' expense." ECF No. 129-2 at ¶155. Thus, plaintiffs argue in their motion that Josh, Dan, and Terry "contractually agreed to assume such tort liability." ECF No. 129 at 9 (emphasis omitted). I am unpersuaded.

To recover on a breach of contract claim, plaintiffs must prove the existence of a contract between the parties. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). However,

6

it is well established in this case that only P&M and MCLC signed the agreement.[2] *See* Operating Agreement, ECF No. 56-1 at 43; *see also* Colo. App. Decision, ECF No. 58-1 at 2. Instead, this claim is yet another attempt by plaintiffs to plead an alter ego claim. I find that it would be futile to allow plaintiffs to add this breach of contract claim against Josh, Dan, and Terry. Accordingly, plaintiffs' motion to add this claim is denied.

### D. Breach of Contract by Intended Third Party Beneficiaries Against Josh, Dan, Terry, David, and DOES.

Plaintiffs' proposed sixth claim for relief is a breach of contract by intended third party beneficiaries. ECF No. 129-2 at 77. This claim is creative and goes like this. According to P&M's written bylaws and organizing agreement, P&M's board of managers and its officers, including Josh, Dan, Terry, and David, "owed extensive overlapping contractual and fiduciary duties to P&M." ECF No. 129 at 10. Josh, Dan, Terry, and David breached their contractual and fiduciary duties *owed to P&M* when they transferred P&M's "one and only asset to another 'Poag' entity for no return consideration to P&M in order to obtain the secret $40 million – not to benefit P&M, but to buyout TERRY's interest in multiple 'Poag' entities." *Id.* This breach of duty owed to P&M in turn resulted in P&M breaching its duties to CLC and MCLC. *Id.* This conduct, plaintiffs argue, "support[s] a direct contract action against the same individuals by CLC and MCLC as intended third-party beneficiaries" of those obligations under P&M's internal organizing agreements. *Id.*

Defendants respond by arguing that plaintiffs cite no authority for the proposition that a party contracting with an LLC may rely on the LLC's internal organizational documents to proceed directly against the LLC's officers for breaching their duties owed under the LLC's own

---

[2] McWhinney Holding Company, LLLP ("McWhinney") and Poag & McEwan Lifestyle Centers, LLC ("PMLC") joined the Operating Agreement solely for the purposes of two specific provisions. *See* Operating Agreement, ECF No. 56-1 at 43; *see also* Colo. App. Decision, ECF No. 58-1 at 2.

documents. ECF No. 137 at 6. Defendants further argue that plaintiffs cannot point to any provision in P&M's bylaws or organizational documents that show a specific intent to benefit plaintiffs. *Id.* In cursory fashion, plaintiffs' counter by arguing that this claim is well pled. ECF No. 173 at 4. Citing paragraphs 150–53 from the proposed SAC—paragraphs which fall under the proposed fourth claim for relief, aiding and abetting P&M's commission of fraud—plaintiffs argue that "Defendants' performance under the P&M organizing agreements was specifically intended to benefit Plaintiffs." *Id.*

As this is a breach of contract claim, Delaware law governs. In Delaware, a third party is permitted to recover on a contract made for its benefit if that party can show that the contracting parties intended to confer a benefit on that third party. *Reserves Dev. LLC v. Severn Sav. Bank, FSB*, No. CIV.A. 2502-VCP, 2007 WL 4054231, at *18 (Del. Ch. Nov. 9, 2007). "In order for third party beneficiary rights to be created, not only is it necessary that performance of the contract confer a benefit upon third parties that was intended, but the conferring of a beneficial effect on such third party . . . should be a material part of the contract's purpose." *Insituform of N. Am., Inc. v. Chandler*, 534 A.2d 257, 270 (Del. Ch. 1987). Plaintiffs must satisfy three elements to demonstrate that they are entitled to recover as a third-party beneficiary: "(1) an intent between the contracting parties to benefit a third party through the contract; (2) an intent that the benefit serve as a gift or in satisfaction of a preexisting obligation to the third party; and (3) a showing that benefiting the third party was a material aspect to the parties agreeing to contract." *Reserves Dev. LLC*, 2007 WL 4054231, at *18.

Plaintiffs' proposed claim falls woefully short of meeting this standard. Nowhere in the proposed SAC or in their briefings do they point to any language in P&M's internal documents which suggest that P&M intended to confer a benefit to plaintiffs. In contrast, defendants point

8

to Section 10.9 of the CLC Operating Agreement, which they argue explicitly eliminates third-party beneficiaries.[3] ECF No. 137 at 7; ECF No. 149 at 7. Plaintiffs fail to respond to this argument in their replies. Because plaintiffs apparently cannot point to any contractual language to support their claim, and because it appears that the CLC Operating Agreement eliminates any reasonable expectation that plaintiffs would have in benefiting from P&M's internal organizational agreements, allowing this claim to go forward would be futile. Accordingly, plaintiffs' motion to add this claim is denied.

### E. Breach of Josh, Dan, Terry, and David's Limited Common Law Fiduciary Duties to P&M's Creditors Under *Alexander v. Anstine*.

Plaintiffs' proposed seventh claim asserts that Josh, Dan, Terry, and David, as directors and officers of P&M, breached fiduciary duties owed to plaintiffs as P&M's creditors. ECF No. 129-2 at 81. Plaintiffs allege that these four defendants diverted CLC's only asset—the Promenade Shops at Centerra—in exchange for the mezzanine loan to fund Terry's $40 million buyout for defendants' own personal benefit. ECF No. 129 at 11; ECF No. 129-2 at ¶¶166–71. Plaintiffs allege that defendants were "functionally insolvent" at the time defendants executed this scheme because "they knew the $155 million interest rate swap was already significantly underwater and would result in a subsequent obligation on the part of P&M to repay CLC (or MCLC) for this improper debt incurred on CLC's behalf." ECF No. 129-2 at ¶169. Importantly,

---

[3] Section 10.9 provides:

> Entire Agreement; Successors and Assigns. This Agreement, together with the Exhibits attached hereto and the Contribution Agreement, contain the entire agreement by and among the parties respecting the subject hereof and shall supersede any prior understandings and agreements among them respecting the subject hereof and shall be binding upon the parties hereto, their successors, heirs, permitted assigns, legal representatives, executors and administrators, *but shall not be deemed for the benefit of creditors or any other Persons*.

Operating Agreement, ECF No. 56-1 at 46 (emphasis added).

the proposed SAC fails to fully explain why or how plaintiffs are P&M's creditors. Plaintiffs simply state that, once "[i]nsolvent and unable to repay the MEZZANINE LOAN, JOSH, DAN, TERRY and DAVID continued to manage CLC, P&M and PMLC (and other subsidiaries) for the benefit of themselves and to the prejudice of PLAINTIFFS as creditors." *Id.* at ¶173. It isn't until the eighth claim for relief—the fraudulent transfer claim—that plaintiffs allege that they "are creditors of P&M resulting from the Phase I Judgment . . . ." *Id.* at ¶182.

In response, defendants argue that plaintiffs fail to allege that there are any unpaid creditors of P&M. ECF No. 137 at 13; ECF No. 149 at 5. Defendants further point out that the Phase I judgment is not final, and therefore, P&M has no outstanding obligations owed to plaintiffs. ECF No. 137 at 13. Plaintiffs do not address defendants' arguments in their reply briefs.

Plaintiffs cite *Alexander v. Anstine* for the proposition that "directors of an insolvent corporation cannot favor themselves over other creditors to the prejudice of those creditors." 152 P.3d 497, 503 (Colo. 2007) (citing *Crowley v. Green*, 365 P.2d 230, 232–33 (Colo. 1961)). This common law fiduciary duty stems from the notion that officers and directors "of an insolvent corporation are 'trustees' for the corporation's creditors." *Id.* at 502 (citing *Crowley*, 365 P.2d at 232–33). As I see it, the issue with plaintiffs' claim is that Judge French ruled in his Phase II judgment that "Plaintiffs failed to prove P&M's insolvency." ECF No. 132 at 17. He continued by stating that "[t]here was no evidence that P&M ever had an obligation that went unpaid." *Id.* With that being said, Phase II is on appeal and thus not a final judgment. Therefore, I cannot say with certainty that the claim is futile. But I implore plaintiffs to take a hard look at the insolvency and timing issues (i.e. Can plaintiffs allege in good faith that they were P&M's creditors at the time of the alleged misconduct in March 2007 when defendants

10

effectuated the mezzanine loan?) when deciding whether plaintiffs want to include this claim in their SAC.

Accordingly, plaintiffs' motion to add this claim is granted. If plaintiffs choose to proceed with this claim, this claim will be stayed along with the alter ego claims pending the Colorado Court of Appeals' decision in Phase II.

### F. Fraudulent Transfer Pursuant to Colo. Rev. Stat. § 38-8-108 against PMLC, PMLSC, PSC, PLC, Josh, Dan, Terry, Poag Bros, and Trustee Defendants.

Unlike the five proposed claims I analyzed above, this claim has been asserted from the beginning of this lawsuit. *See* Complaint, ECF No. 17 at 57; First Amended Complaint, ECF No. 22 at 53. Originally, plaintiffs asserted this claim against all defendants. Plaintiffs now wish to clarify the specific defendants they assert this claim against. *See* ECF No. 129-2 at 84.

In the spirit of Rule 15(a)(2), I grant plaintiffs' request for leave to amend this claim. Unlike the other claims, plaintiffs do not argue the merits of this claim. Therefore, defendants' Rule 12(b)(6) arguments are premature. I also note that this claim is stayed along with the alter ego claims. There will be time for defendants to address the merits of this claim after the Colorado Court of Appeals issues its Phase II decision. Accordingly, plaintiffs' motion to amend their fraudulent transfer claim is granted.

### G. Declaratory Relief Pursuant to Colo. Rev. Stat. § 13-51-101 et seq. and Colo. R. Civ. P. 57 against all defendants.

In my September 2018 order on motions to dismiss, ECF No. 106, I granted PSC's motion to dismiss for failure to state an alter ego claim against PSC. *Id.* at 10–17. However, because the federal case was in its early stages, I dismissed that claim without prejudice. Plaintiffs now seek leave to amend to bolster their claim of fraud against PSC. *See* ECF No.

11

129-2 at 86–89. Upon review of the proposed amended complaint and the parties' briefs, I now dismiss that claim against PSC with prejudice for failure to cure the deficiency.

"[A] court can pierce the corporate veil of an entity where there is fraud or where a subsidiary is in fact a mere instrumentality or alter ego of its owner." *Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 793 (Del. Ch. 1992).[4] Delaware courts will analyze the following factors when determining whether to pierce the veil of a corporation or LLC: "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the dominant shareholder." *EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, No. CIV.A. 3184-VCP, 2008 WL 4057745, at *12 (Del. Ch. Sept. 2, 2008) (citing *Pauley Petroleum, Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. 1968)). "A decision to disregard the corporate entity generally results not from a single factor, but rather some combination of them, and an overall element of injustice or unfairness must always be present, as well." *Id.* (quoting *Harco Nat'l Ins. Co.*, 1989 WL 110537, at *5 (Del. Ch. Sept. 19, 1989)). Moreover, "the requisite element of fraud under the alter ego theory must come from an inequitable use of the corporate form itself as a sham, and not from the underlying claim." *EBG Holdings LLC*, 2008 WL 4057745, at *12 (Del. Ch. Sept. 2, 2008).

It is this last requirement—that the fraud or injustice cannot come from the underlying claim—that proves fatal to plaintiffs' claim. This is the primary reason I dismissed this claim in my previous order. *See* ECF No. 106 at 16. In their proposed SAC and in their briefings, instead of alleging additional facts to support a claim of fraud above and beyond the fraudulent transfer claim, plaintiffs simply argue that PMLC and PMLSC formed PSC "for the sole purpose of

---

[4] My choice of law analysis from my previous order, ECF No. 106 at 11, is fully incorporated here.

receiving PMLC and PMLSC's fraudulently transferred assets as PMLC and PMLSC's alter ego." ECF No. 140 at 1. Again, plaintiffs improperly attempt to use the underlying claim of fraudulent transfer to form the fraud or injustice requirement of their alter ego claim. Put another way, the only wrongful conduct asserted against PSC is PSC's acceptance of a fraudulent transfer. That claim is alive and well and will be litigated in the second phase of trial. But because there is no other alleged wrongdoing by PSC, this claim is dismissed with prejudice against PSC.

### H. Exemplary Damages Claim Against Dan, Josh, and Terry.

Plaintiffs seek leave to amend to add a claim for exemplary damages per Colo. Rev. Stat. § 13-21-102 against Dan, Josh, and Terry. This claim is unopposed. Accordingly, plaintiffs' motion for leave to amend to add an exemplary damages claim is granted.

## ORDER

For the reasons above, plaintiffs' motion for leave to amend their first amended complaint [ECF No. 129] is GRANTED in part and DENIED in part.

DATED this 29th day of March, 2019.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge